**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000428**
**28-JUN-2017**
**08:35 AM**

NO. CAAP-16-0000428

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ALBERT BATALONA, Petitioner-Appellant,
v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P.P. NO. 10-1-0075; CR. NO. 03-1-0787)

MEMORANDUM OPINION
(By: Reifurth, Presiding Judge, Ginoza and Chan, JJ.)

Petitioner-Appellant Albert Batalona (Batalona) appeals from the "Amended Findings of Fact, Conclusions of Law, and Order Granting in Part and Denying in Part Petition for Post-Conviction Relief," filed on July 17, 2015 (7/17/15 Amended FOF/COL/Order), and the "Findings of Fact, Conclusions of Law, Order and Final Disposition Regarding Petition for Post-Conviction Relief," filed on April 27, 2016 (4/27/16 FOF/COL/Order), in the Circuit Court of the First Circuit (circuit court).[1] In the 7/17/15 Amended FOF/COL/Order, the circuit court found, *inter alia*, the claim that Batalona's extended sentence was illegal under Apprendi v. New Jersey, 530 U.S. 466 (2000), had been raised and ruled upon in his direct appeal. In the 4/27/16 FOF/COL/Order, after a hearing, the court ordered Batalona to apply at least ten percent

---

[1] The Honorable Colette Y. Garibaldi presided.

of any prison earnings toward the amount of money owed in restitution.

On appeal, Batalona argues that the circuit court erred by denying his requests, in his Hawai'i Rules of Penal Procedure (HRPP) Rule 40 Petition for Post-Conviction Relief,[2] to (1) set aside the restitution order, based on insufficient findings and conclusions demonstrating that he could afford to pay restitution in the ordered amount, and (2) correct his illegal sentence, where the record revealed that his judgment of conviction and extended-term sentence became final on March 13, 2006, after Apprendi, Blakely v. Washington, 542 U.S. 296 (2004), and U.S. v. Booker, 543 U.S. 220 (2005), taken together, established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is inconsistent with the Sixth Amendment of the United States Constitution.

I.

A.   The circuit court abused its discretion by concluding that Batalona could afford to pay the amount of restitution ordered, based on insufficient findings of fact.

The version of Section 706-605 (1) of the Hawaii Revised Statutes (HRS) applicable at the time Batalona committed the offenses required the circuit court to make any restitution ordered "in an amount the defendant can afford to pay."[3]   See HRS

---

[2]   On September 30, 2010, Batalona filed a "Petition to Vacate, Set Aside or Correct Judgment or to Release Petitioner from Custody Pursuant to Hawai'i Rules of Penal Procedure Rule 40" (9/30/10 Rule 40 Petition).   On October 24, 2012, he filed a "First Amended [Rule 40 Petition]" (10/24/12 Rule 40 Petition).   The circuit court construed together the 9/30/10 Rule 40 Petition and 10/24/12 Rule 40 Petition as a single Rule 40 petition.

[3]   Batalona committed the offenses prior to 2006.   In State v. Curioso, (SDO) No. CAAP-13-0001014, 2014 WL 1271038, 132 Hawai'i 518, *2, 323 P.3d 162, *2 (App. Mar. 28, 2014), this court explained:

> Before 2006, HRS § 706-605(1)(d) authorized a court to sentence a convicted defendant "([t]o make restitution in an amount the defendant can afford to pay[.]"   See 2006 Haw. Sess. Laws. Act 230 § 17 at 1007 (emphasis added). Accordingly, courts were required to make findings as to a defendant's ability to pay the amount of restitution specified in their orders under HRS § 706-605(1)(d).   See [State v. Gaylord, 78 Hawai'i 127, 152, 890 P.2d 1167, 1192

§ 706-605(1) (Supp. 2003).

In <u>State v. Gaylord</u>, 78 Hawai'i 127, 153, 890 P.2d 1167, 1193 (1995), the Hawai'i Supreme Court (supreme court) explained, with regard to restitution orders, "it is incumbent upon the sentencing court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which the defendant can afford." (Internal quotation marks, brackets, citation, and footnote omitted.) The supreme court explained in a footnote that "HRS § 706-605(1)(d) imposes upon the sentencing court the exclusive responsibility and function of determining the amount of restitution and acknowledges that the sentencing court does so by taking into consideration the defendant's circumstances known to the court at the time the sentence is imposed." <u>Id.</u> at 153 n.50, 890 P.2d at 1193 n. 50 (quotation marks, citations, and italics omitted).

In <u>State v. Martin</u>, 103 Hawai'i 68, 77-78, 79 P.3d 686, 695-96 (App. 2003), this court added that "unless the [restitution] payment will be in one payment or a few installments, neither the amount nor the installments can be determined without first deciding the time period available for payment." We held that "[t]he sentencing court, when it decides to order the defendant to pay restitution, must enter findings validating its decision that the total amount of restitution ordered is an amount the defendant is or will be able to pay during the time the restitution order remains unsatisfied and enforceable." <u>Id.</u> at 86, 79 P.3d at 704.

---

(1995)]; *see also State v. Werner*, 93 Hawai'i 290, 296, 1 P.3d 760, 766 (App. 2000). It was "incumbent upon the [sentencing] court to enter into the record findings of fact and conclusions that the manner of payment is reasonable and one which [the defendant] can afford." *Gaylord*, 78 Hawai'i at 153, 890 P.2d at 1193 (citation and internal quotation marks omitted).

. . . . Act 230, Session Laws 2006, amended HRS § 706-605 to "[r]equire[] that when restitution is ordered, the amount ordered not be based on the defendant's financial ability to make restitution but such ability may be considered in establishing the time and manner of payment[.]" H. Stand. Comm. Rep. No. 665-06 at 2 (Mar. 2, 2006)[.]

In <u>State v. Werner</u>, 93 Hawai'i 290, 297, 1 P.3d 760, 767 (App. 2000), we held that, under <u>Gaylord</u>, the circuit court must enter findings and conclusions illustrating that the defendant can afford to pay the restitution amount, which includes determining the relevant time period, the defendant's gross income, and necessary expenses during the relevant time period.

In this case, in its 4/27/16 FOF/COL/Order the circuit court found the following, in relevant part:

> 18. At further hearing on the Petition, the State presented witness, Howard Komori ("Mr. Komori"), the Acting Administrator of Non-State Facilities, which includes Saguaro, located in Arizona. Mr. Komori testified regarding [Batalona's] ability and opportunity to earn a wage, and the procedure for inmate's monetary accounts at Saguaro. An inmate has the opportunity to work to earn a wage subject to job availability and subject to disciplinary action.
>
> 19. Hearing on this matter was continued to January 27, 2016. [Batalona] testified that he had worked while incarcerated at Saguaro in the past. He stated his monthly earnings were about $30 per month.

The circuit court concluded:

> 1. Pursuant to the records in the above-captioned matter and pursuant to evidence adduced at hearing on the petition, the trial court in Criminal Number 03-1-0787 did not make a specific finding regarding [Batalona's] ability to pay the restitution ordered.
>
> 2. Under [HRS] § 353-22.6, the Department of Public Safety "shall enforce victim restitution orders against all moneys earned by the inmate or deposited or credited to the inmate's individual account while incarcerated."
>
> 3. HRS § 353-22.6, Victim Restitution, requires payments of 25% of a prisoner's actual earnings. However, the version of the statute in effect at the time the court issued its order with respect to [Batalona], required only a 10% contribution, thus [Batalona] is required to make payments of only 10% of his prison earnings, and is limited to moneys earned by [Batalona].
>
> 4. [Batalona] has the ability to earn a wage while incarcerated at Saguaro, and thus has the ability to make regular restitution payments. To the extent [Batalona] is employed earning moneys from prison work, 10% of any prison earnings established is ordered to be applied toward the satisfaction of the restitution ordered.

Although the circuit court satisfied the requirement to prescribe a reasonable manner of payment by ordering Batalona to pay ten percent of his gross income, <u>see id.</u> at 296, 1 P.3d at

766, the court did not ultimately find or enter sufficient preliminary findings specifically illustrating that Batalona could afford to pay the amount of restitution ordered. The court merely found that as an inmate, Batalona had the ability to make an income and had worked while incarcerated in the past, making about thirty dollars per month. Based on his conviction in a prior case, Batalona is sentenced to life in prison without the possibility of parole.[4] The circuit court did not make findings as to whether, given his life sentence, the amount of his anticipated gross income, and necessary expenses, Batalona could afford to pay the restitution.

Accordingly, the circuit court abused its discretion in concluding that Batalona could afford to pay the amount of restitution ordered, based on insufficient findings of fact.

**B.    The circuit court was not wrong to conclude that Apprendi does not apply to Batalona's sentence.**

Batalona argues that the circuit court erred in summarily denying his request to correct his illegal sentence where his judgment of conviction and extended-term sentence became final on March 13, 2006, after the Apprendi, Blakely, and Booker rulings, which together, established that a sentencing scheme in which the maximum possible sentence was set based on facts found by a judge was inconsistent with the Sixth Amendment.

The State concedes this point, stating that:

> Because [Batalona's] direct appeal was pending well after Apprendi was issued, and Hawai'i Courts are bound by Apprendi, [Batalona's] extended term of ten years on his class C felony conviction cannot stand because the circuit court, and not a jury, found the fact of "necessary for protection of the public" which increased [Batalona's]

---

[4]    In Criminal No. 99-1549, Batalona was sentenced to life imprisonment without the possibility of parole. Batalona was also assessed a fine of $10,000, and he and his two co-defendants were ordered to pay restitution of $9448, jointly and severally (Batalona's share was $3149).
On January 9, 2004, Batalona was sentenced to an extended-term of imprisonment of ten years for the offense of Escape in the Second Degree. This sentence was to run consecutive to his aforementioned life sentence.

5

sentence beyond the prescribed statutory maximum of five years.

Notwithstanding the State's concession, "appellate courts have an independent duty 'first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'" State v. Veikoso, 102 Hawai'i 219, 221-22, 74 P.3d 575, 577-78 (2003) (quoting State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000)). In other words, the State's concession of error "is not binding upon an appellate court . . . ." Hoang, 93 Hawai'i at 336, 3 P.3d at 502 (quoting Territory v. Kogami, 37 Haw. 174, 175 (Haw. Terr. 1945)) (internal quotation marks omitted).

The State argues that Batalona's sentence must be vacated because Batalona's 2006 appeal was pending long after Apprendi was decided. However, as this court recently explained:

> Until [State v. Maugaotega, 115 Hawai'i 432, 168 P.3d 562 (2007)], the Hawai'i Supreme Court repeatedly upheld the constitutionally [sic] of Hawai'i's extended term sentencing scheme in the face of challenges based on Apprendi and its progeny, Blakely and Booker. It was the United States Supreme Court's 2007 decision in [Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007)] that caused the Hawai'i Supreme Court to change its view and hold that Hawai'i's extended term sentencing scheme was unconstitutional under Apprendi, despite the limitations the Hawai'i Supreme Court had imposed through its intrinsic/extrinsic analysis. Therefore, under the Hawai'i Supreme Court's interpretation of federal constitutional law, it was Cunningham and not Apprendi that announced the new rule that dictated and made clear that Hawai'i's extended term sentencing scheme was unconstitutional. Accordingly, based on the precedents of the Hawai'i Supreme Court, it is Cunningham that establishes the line of demarcation - that is, extended term sentences that became final after Apprendi but before Cunningham are not subject to collateral attack.

Mara v. State, 139 Hawai'i 414, 419, 391 P.3d 1236, 1241 (App. 2017) (footnote omitted). Here, on March 2, 2006, Batalona petitioned for a writ of certiorari to the Hawai'i Supreme Court. On March 13, 2006, the supreme court denied the application. Therefore, Batalona's sentence became final on March 13, 2006, before Cunningham was decided.

6

II.

Given the foregoing, the part of the 4/27/16 FOF/COL/Order that orders Batalona to apply ten percent of any prison earnings toward the remaining amount of money owed in restitution is vacated and the case is remanded with instructions to the circuit court to (1) determine whether Batalona can afford to pay the amount of restitution ordered and, if so, (2) issue appropriate findings and conclusions specifically illustrating that he can afford to pay that amount.

For the reasons set forth in this opinion, the 7/17/15 Amended FOF/COL/Order is affirmed with respect to the Apprendi issue.

DATED: Honolulu, Hawai'i, June 28, 2017.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender
for Petitioner-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney
City and County of Honolulu
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge